**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- :
RYAN O'DELL,                                            :
                                                        :
                    Plaintiff,                          :   Case No. 1:23-cv-659
                                                        :
v.                                                      :
                                                        :   **COMPLAINT FOR VIOLATIONS OF**
PAYA HOLDINGS INC., JEFFREY HACK,                       :   **SECTIONS 14(e), 14(d) AND 20(a) OF**
KALEN JAMES MCCONNELL, ONI                              :   **THE SECURITIES EXCHANGE ACT**
CHUKWU, SID SINGH, ANNA MAY                             :   **OF 1934**
TRALA, STUART YARBROUGH, AARON                          :
D. COHEN, COLLIN E. ROCHE, DEBORAH                      :   **JURY TRIAL DEMANDED**
BOYDA, and MICHAEL J. GORDON,                           :
                                                        :
                    Defendants.                         :
------------------------------------------------------- :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Paya Pharma, Inc. ("Paya or the

"Company") and the members Paya board of directors (the "Board" or the "Individual Defendants"

and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d),

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the

proposed acquisition of Paya by affiliates of Nuvei Corporation, a corporation incorporated

pursuant to the laws of Canada ("Nuvei").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on January 24, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Pinnacle Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Nuvei, will merge with and into Paya, with Paya continuing as the surviving corporation and as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated January 8, 2023 (the "Merger Agreement"), each Paya common share issued and outstanding will be converted into the right to receive $9.75 per share of Company stock owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Paya's outstanding common stock and will expire on February 21, 2023 (the "Tender Offer").

3.     Defendants have now asked Paya's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Paya's financial projections relied upon by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Raymond James & Associates, Inc. ("Raymond James" and with J.P. Morgan, the "Financial Advisors") and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Financial Advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Paya stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.     It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Paya's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Paya common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Jeffrey Hack has served as a member of the Board since 2020 and is the Company's Chief Executive Officer.

11.     Individual Defendant Kalen James McConnell has served as a member of the Board since 2020.

12.     Individual Defendant Oni Chukwu has served as a member of the Board since 2021.

13.     Individual Defendant Sid Singh has served as a member of the Board since 2021.

14.     Individual Defendant Anna May Trala has served as a member of the Board since 2020.

15.     Individual Defendant Stuart Yarbrough has served as a member of the Board since 2020.

16.     Individual Defendant Aaron D. Cohen has served as a member of the Board since 2020 and is the Chair of the Board.

17.     Individual Defendant Collin E. Roche has served as a member of the Board since 2020.

18.     Individual Defendant Debora Boyda has served as a member of the Board since 2022.

19.     Individual Defendant Michael J. Gordon has served as a member of the Board since 2020.

20.     Defendant Paya is incorporated in Delaware and maintains its principal offices at 303 Perimeter Center North, Suite 600, Atlanta, Georgia 30346.  The Company's common stock trades on the NASDAQ Capital Market under the symbol "PAYA."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

23.    Paya, through its subsidiaries, operates as an independent integrated payments platform. It operates through two segments, Integrated Solutions and Payment Services. The company processes payments through credit and debit card, automated clearing house, and check payments. It serves customers through distribution partners with focus on targeted verticals, such as B2B goods and services, healthcare, faith-based and non-profit, government and utilities, and education markets. The company is headquartered in Atlanta, Georgia with additional offices in Reston, Virginia; Fort Walton Beach, Florida; Dayton, Ohio; Mt. Vernon, Ohio; Dallas, Texas; and Tempe, Arizona.

24.    On January 9, 2023, Nuvei and the Company jointly announced the Proposed Transaction:

> MONTREAL and ATLANTA, Jan. 09, 2023 (GLOBE NEWSWIRE) -- Nuvei Corporation ("Nuvei" or the "Company") (Nasdaq: NVEI) (TSX: NVEI), the Canadian fintech company, and Paya Holdings Inc. ("Paya") (Nasdaq: PAYA), a leading provider of integrated payment and commerce solutions in the U.S., today announced that they have entered into a definitive agreement whereby Nuvei will acquire Paya in an all-cash transaction at USD $9.75 per share for total consideration of approximately $1.3 billion.
>
> "The proposed acquisition of Paya is a powerful next step in the evolution of Nuvei, creating a preeminent payment technology provider with strong positions in global eCommerce, Integrated Payments and business-to-business ("B2B")," said Philip Fayer, Nuvei's Chair and Chief Executive Officer. "The proposed transaction will combine two people-first, technology-led, high-growth payment platforms. It will accelerate our integrated payment strategy, diversify our business into key high-growth non-cyclical verticals with large addressable end markets and enhance the execution of our growth plan."
>
> "We are pleased to have reached this transaction with Nuvei, which is a testament to the incredible talent at Paya, and will deliver immediate and significant cash value to Paya shareholders," said

Jeff Hack, Paya's Chief Executive Officer. "We continue to see strong momentum in our high-growth and underpenetrated middle market partners in durable end-markets, and believe that Nuvei's resources will enable us to continue our mission of solving complex business problems with easy-to-use payment solutions."

**Strategic Rationale and Benefits of the Transaction**

- Enhances Nuvei's ability to execute on high-growth integrated payment opportunities

    o Paya's deep software integrations with 300+ independent software vendor ("ISV") platforms and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global software-led market opportunity

    o Plugs Paya's highly complementary integrated payment capabilities into Nuvei's global technology platform for an enhanced customer proposition and incremental growth opportunities

    o Integrated payments is the highest-growth card payments distribution channel in the U.S.[1] For 2021, roughly 41% of new merchants in the US were signed from the integrated payments channel[2]

- Diversifies Nuvei's business across high-growth, underpenetrated and non-cyclical end markets each with a large estimated total addressable market ("TAM")

    o Paya has a strong footprint in key non-cyclical verticals, including B2B goods and services (estimated $1.2 trillion TAM)[3], healthcare (estimated $235 billion TAM)[4], non-profit and education (estimated $145 billion TAM)[4], and government and utilities (estimated $130 billion TAM)[4]

- Expands Nuvei's capabilities into large and growing B2B

    o Paya's deep enterprise resource planning (ERP) integrations and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global B2B opportunity

    o The U.S. B2B payments middle market is expected to grow at a 10%+ compound annual growth rate (CAGR) (2019-2026) with an estimated market size of $2.3 trillion in 2026[3]

- Amplifies Nuvei's existing growth strategy

    o Establishes Paya's leading ISV and B2B capabilities in Nuvei's global markets

    o Accelerates growth by offering Nuvei's solutions into Paya's partners and customers in the U.S.

- o Broadens strong ISV and eCommerce capabilities to enter new markets
- o Expands M&A scope to include ISV, B2B and proprietary software opportunities
- Reinforces Nuvei's compelling financial profile
  - o On a combined basis[5] for the last twelve months ("LTM") ended September 30, 2022, Combined Total volume[6] was approximately $167 billion, Combined Revenue[7] was approximately $1.1 billion, and Combined Adjusted EBITDA[7] was approximately $429 million (which does not include up to $21 million of estimated run-rate cost synergies expected to be achieved within 24 months)[8], and Combined Adjusted EBITDA less capital expenditures was approximately $380 million[7]. Nuvei's LTM net income and revenue was $65 million and $835 million, respectively, and Paya's LTM net income and revenue was $9.5 million and $277 million, respectively.

**Transaction Details**

The transaction has been unanimously approved by each party's Board of Directors, and the Board of Directors of Paya intends to recommend the transaction to Paya's stockholders. Pursuant to the terms of the agreement, Nuvei will commence a tender offer to acquire all outstanding shares of Paya for $9.75 per share in cash (approximately $1.3 billion of enterprise value ("EV") for Paya). The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Paya's outstanding shares, the expiration or termination of the antitrust waiting period, and other customary conditions. Following the successful completion of the tender offer, Nuvei will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction is expected to close by the end of the first quarter of 2023.

The purchase price represents a 25% premium to the January 6, 2023 closing price and a 30% premium to the 90-day volume-weighted average share price ("VWAP"). The implied transaction multiple is approximately 13x EV/2023E Adjusted EBITDA[9] based on consensus estimates for Paya (once the full benefit of expected synergies is taken into account). Paya's net income for the LTM period ended September 30, 2022 was $9.5 million.

Nuvei expects to finance the acquisition with a combination of cash on hand, an existing credit facility and a new committed $600 million first lien secured credit facility (the "New Credit Facility").[10]

Nuvei's net leverage ratio, defined as the ratio of consolidated net debt outstanding (outstanding credit facilities less cash), to consolidated adjusted EBITDA, calculated in accordance with the terms of Nuvei's credit agreement, is expected to be less than 3x upon (and giving effect to) the closing of the transaction.

The proposed transaction is expected to deliver up to $21 million of estimated run-rate cost synergies within 24 months, as well as provide attractive revenue synergy upside potential by bringing Nuvei's global capabilities as additional offerings to Paya's partners and customers. The transaction is expected to be accretive to adjusted EPS in 2023.

An investment fund affiliated with GTCR LLC has entered into a tender and support agreement pursuant to which it has agreed, among other things, to tender its Paya shares pursuant to the tender offer, subject to certain conditions. This stockholder currently represents approximately 34% of the outstanding shares of Paya's common stock.

The Merger Agreement also includes customary termination provisions for both Nuvei and Paya, and provides that, in connection with the termination of the Merger Agreement under specified circumstances, including termination by Paya to accept and enter into an agreement with respect to a superior proposal, Paya will pay Nuvei a termination fee of approximately $38 million.

**Advisors**

Barclays Capital Inc. is serving as the lead financial advisor to Nuvei. BMO Capital Markets, RBC Capital Markets and Evercore Group LLC have also provided financial advice to Nuvei.

Bank of Montreal and Royal Bank of Canada have provided committed financing to Nuvei. Davis Polk & Wardwell LLP and Stikeman Elliott LLP are serving as legal advisors.

J.P. Morgan Securities LLC and Raymond James & Associates, Inc. are serving as financial advisors to Paya and Kirkland & Ellis LLP is serving as Paya's legal advisor.

\* \* \*

25.     It is therefore imperative that Paya's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

26.     On January 24, 2023, Paya filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.   The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Solicitation Statement fails to provide material information concerning financial projections by Paya management and relied upon by the Financial Advisors in their analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Paya management provided to the Board and the Financial Advisors. Courts have uniformly stated that

"projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted EBIT and Unlevered Free Cash Flow but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     The Solicitation Statement also fails to disclose the specific risk adjustments made by Paya management related to the Company's long-range operating plan.

30.     When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32.    Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

33.    With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Solicitation Statement fails to disclose: (i) the financial metrics and multiples for each company selected by J.P. Morgan for the analysis; and (ii) the basis for selecting a trading multiple reference range of 9.5x to 13.0x for the Company's FV/2023E Adj. EBITDA.

34.    With respect to J.P. Morgan's *Selected Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis; and (ii) the basis for selecting a transaction multiple reference range of FV/NTM Adj. EBITDA Multiples of 13.0x to 18.5x.

35.    With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; (ii) the terminal value of the Company; (iii) the Company's weighted average

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

cost of capital; and (iv) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.5% to 3.5%.

36.     With respect to J.P, Morgan's *Analyst Price Target* analysis, the Solicitation Statement fails to disclose the equity research analyst reports reviewed and the price targets published by each analyst.

*Omissions and/or Material Misrepresentations Concerning Raymond James' Financial Analysis*

37.     With respect to Raymond James' *Selected Companies Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each company selected by Raymond James for the analysis.

38.     With respect to Raymond James' *Selected Transaction Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis.

39.     With respect to Raymond James' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 9% to 11%; (ii) the terminal value of the Company; (iii) the Company's weighted average cost of debt and equity capital; and (iv) the inputs and assumptions underlying the perpetuity growth rates ranging from 2% to 3%.

40.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for**
**Violations of Section 14(e) of the Exchange Act**

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

43.    Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.    The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

45.    In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation

13

of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

46.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

47.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>COUNT II</u>
**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

49.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

50.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

51.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

52.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

53.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

54.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Paya within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Paya, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Paya, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Paya, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

59.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: January 25, 2023                    **MELWANI & CHAN LLP**

                                           /s *Gloria Kui Melwani*

17

Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
Tel: (212) 382-4620
Email:  gloria@melwanichan.com

*Attorneys for Plaintiff*